UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
RAZVAN MIREA and DANIEL MIREA,

                        Plaintiff,

      -against-

CENTENNIAL PROPERTIES NY INC. and
STEVEN CROMAN,

                        Defendants.
------------------------------------------------------------------------ X

**COMPLAINT**

Plaintiffs Razvan Mirea and Daniel Mirea (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of defendants Centennial Properties NY Inc. ("Centennial Properties") and Steven Croman (collectively, "Defendants"), allege:

### NATURE OF THE ACTION

1. While employed within Defendants' construction department, Plaintiffs were responsible for ensuring that maintenance and construction projects at over 100 residential apartment buildings were completed correctly. Despite working up to 106-hour workweeks during their employment, Defendants failed to pay Plaintiffs one and one-half times their applicable regular hourly wage rates for hours worked over forty per workweek. Moreover, Defendants failed to furnish Plaintiffs with statutorily required wage notices and accurate weekly wage statements.

2. Plaintiffs bring this action to recover unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("NYLL"), and the New York State Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because the majority of events giving rise to Plaintiffs' claims occurred in New York County, which is located in this district.

## THE PARTIES

**Plaintiff Razvan Mirea**

5. Razvan Mirea resides in New York County, New York.

6. Razvan Mirea worked for Centennial Properties as a construction coordinator from approximately April 16, 2021, through November 15, 2022.

**Plaintiff Daniel Mirea**

7. Daniel Mirea resides in New York County, New York.

8. Daniel Mirea was initially hired by Centennial Properties to act as a tenant liaison on April 1, 2021. However, approximately two weeks later on April 16, 2021, the position was discontinued and Daniel Mirea became a field manager for Centennial Properties until the end of his employment on October 7, 2022.

**Defendant Centennial Properties NY Inc.**

9. Defendant Centennial Properties NY Inc. is a New York domestic business corporation with its principal office located at 740 Broadway, 2nd Floor, New York, New York, 10003.

10. Centennial Properties is a full-service building management and brokerage firm with interests in over 100 buildings in and around Manhattan, New York. The company has been active for the last twenty years.

11. Centennial Properties is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

12. Centennial Properties has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

13. In each of the three years preceding the filing of this Complaint, Centennial Properties' annual gross volume of sales exceeded $500,000.

**Defendant Steven Croman**

14. Defendant Steven Croman is an owner of Centennial Properties and is listed as the entity's chief executive officer in its New York State Department of State filings. Croman also owns the apartment buildings Centennial Properties provides services for.

15. Throughout Plaintiffs' employment, Croman held and exercised authority over personnel decisions at Centennial Properties, including the authority to hire and fire employees, set employee wage rates, assign employees duties, and maintain employee pay records.

16. For example, Croman hired and fired Plaintiffs, set their work schedules, assigned their work duties, and determined their rates of pay.

17. Croman exercised sufficient control over Centennial Properties' operations and the employment of Plaintiffs to be considered their "employer" under the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

18. Throughout their employment with Defendants, Plaintiffs were responsible for ensuring maintenance and construction projects were completed correctly and on time. Both Plaintiffs were responsible for negotiating with contractors and vendors when ordering materials. Aside from these shared duties performed at Defendants' office, Daniel Mirea's position as a field manager required him to perform quality control duties at Centennial Properties' job sites. This included inspecting ongoing work, speaking with local foremen, and providing status reports to higher-ups. Inversely, Razvan Mirea's position as construction coordinator kept him in Centennial Properties' office, where he coordinated with architects to ensure project compliance, obtained required permits, and generally assisted property managers with their day-to-day duties.

19. Throughout their employment, Plaintiffs worked exclusively with Defendants and performed all of their duties at Centennial Properties' office and job sites. Plaintiffs were not allowed to perform work for other entities while working for Defendants.

20. Throughout their employment, Defendant Croman set Plaintiffs' wage rates and work schedules, assigned them work-related tasks, and reviewed the quality of their work. If necessary, he would order them to redo tasks.

21. When performing their work duties for Defendants, Plaintiffs exclusively used tools and appliances owned and provided by Defendants.

22. For example, Defendants provided and paid for Plaintiffs' work cell phones with their own accompanying phone numbers and data plans.

23. For example, Centennial Properties purchased and owned the computers and software that Plaintiffs used to perform their day to day tasks.

24. Throughout their employment, Centennial Properties would reimburse Plaintiffs for any costs or expenses that they incurred while performing their duties for Defendants.

25. Plaintiffs were under the exclusive direction and control of Defendants.

26. Defendants failed to furnish Plaintiffs with wage notices when hired or when their rates of pay changed.

27. Defendants failed to furnish Plaintiffs with accurate wage statements with each payment of their wages throughout their employment.

28. Defendants' failure to comply with the WTPA's wage notice and wage statement requirements went beyond technical errors or omissions. Defendants deprived Plaintiffs of wage notices in their entirety and of wage statements identifying their overtime hours and wage rates.

29. As a result, Plaintiffs were intentionally uninformed about the wage rates they should have been receiving for hours over forty in a work week.

30. In other words, Defendants' failure to comply with the WTPA was an intentional effort to deprive Plaintiffs of the ability to know if they were being paid correctly and if not, exactly how much compensation they were entitled to, and led to the underpayment of wages alleged herein.

31. The damages Plaintiffs suffered because of the underpayment of their wages is directly traceable to Defendants' overt and intentional failure to comply with the WTPA's wage notice and wage statement requirements.

**Razvan Mirea's Hours Worked and Wages Paid**

32. From April 16, 2021, through November 15, 2022, Defendants paid Razvan Mirea $30 per hour worked, including those over forty per workweek.

5

33. From November 15, 2021, through the end of his employment, Defendants paid Razvan Mirea $45 per hour worked, including those over forty per workweek.

34. Throughout his employment with Defendants, Razvan Mirea received his wages in weekly checks paid out to an entity he owned, 5M Equities Management LLC. His name and his corresponding overtime rate were not included in the weekly checks or the corresponding wage statements.

35. Throughout his employment with Defendants, Razvan Mirea worked a varied schedule that constantly changed, but would routinely require him to work over forty hours per workweek.

36. For example, for the pay period beginning on December 13, 2021, and ending on December 19, 2021, Razvan Mirea worked approximately 105 hours. He was paid $45 for each hour worked during this week. An image of the accompanying wage statement Razvan Mirea received is included:



37. For example, for the pay period beginning on October 11, 2021, and ending on October 17, 2021, Razvan Mirea worked approximately seventy-two hours. He was paid $30 for each hour worked during this week. An image of the accompanying wage statement Razvan Mirea received is included:

> **Company Code** RF / 7PT 20891243  **Loc/Dept** 01/300  **Number** 21077  **Page** 1 of 1
> Centennial Properties NY Inc
> 740 Broadway 2nd Floor
> NEW YORK, NY 10003
>
> **Earnings Statement**   ADP
> Period Starting: 10/11/2021
> Period Ending: 10/17/2021
> Pay Date: 10/20/2021
> Business Phone: 212-228-9300
>
> Taxable Marital Status:
> Exemptions/Allowances:
>   Federal: 0
>   State: 0
>   Local: 0
> Social Security Number: XX-XXXXXXX
> Tax Override:
>   Federal:
>   State:
>   Local:
>
> 5M Equities Management LLC
> P O Box 815
> New York, NY 10021
>
> | Earnings | rate | hours/units | this period | year to date |
> |---|---|---|---|---|
> | 1099 Compensation | 30.0000 | 72.00 | 2160.00 | 43952.40 |
> | Gross Pay | | | $2,160.00 | $0.00 |
>
> | Other Benefits and Information | this period | year to date |
> |---|---|---|
> | Total Hours Worked | 72.00 | 1465.08 |

38.    For example, for the pay period beginning on March 7, 2022, and ending on March 13, 2022, Razvan Mirea worked approximately sixty-seven hours. He was paid $45 for each hour worked during this week. An image of the accompanying wage statement Razvan Mirea received is included:

> **Company Code** RF / 7PT 20891243  **Loc/Dept** 01/300  **Number** 6807486  **Page** 1 of 1
> Centennial Properties NY Inc
> 740 Broadway 2nd Floor
> NEW YORK, NY 10003
>
> **Earnings Statement**   ADP
> Period Starting: 03/07/2022
> Period Ending: 03/13/2022
> Pay Date: 03/16/2022
> Business Phone: 212-228-9300
>
> Taxable Marital Status:
> Exemptions/Allowances:
>   Federal: 0
>   State: 0
>   Local: 0
> Social Security Number: XX-XXXXXXX
> Tax Override:
>   Federal:
>   State:
>   Local:
>
> 5M Equities Management LLC
> P O Box 815
> New York, NY 10021
>
> | Earnings | rate | hours/units | this period | year to date |
> |---|---|---|---|---|
> | 1099 Compensation | 45.0000 | 67.00 | 3015.00 | 28980.00 |
> | Gross Pay | | | $3,015.00 | $0.00 |
>
> | Other Benefits and Information | this period | year to date |
> |---|---|---|
> | Total Hours Worked | 67.00 | 644.00 |

**Daniel Mirea's Hours Worked and Wages Paid**

39.    From April 1, 2021, through March 13, 2022, Defendants paid Daniel Mirea $35 per hour worked, including those over forty per workweek.

40.    From March 14, 2022, through the end of his employment, Defendants paid Daniel Mirea $40 per hour worked, including those over forty per workweek.

41.    Throughout his employment with Defendants, Daniel Mirea received his wages in weekly checks paid out to an entity he owned, 5mequities LLC. His name and

7

his corresponding overtime rate were not included in the weekly checks or the corresponding wage statements.

42. Throughout his employment with Defendants, Daniel Mirea worked a varied schedule that constantly changed but would routinely require him to work over forty hours per workweek.

43. For example, for the pay period beginning on December 13, 2021, and ending on December 19, 2021, Daniel Mirea worked approximately 106 hours. He was paid $35 for each hour worked during this week. An image of the accompanying wage statement Daniel Mirea received is included:



44. For example, for the pay period beginning on January 17, 2022, and ending on January 23, 2022, Daniel Mirea worked approximately sixty-four and a half hours. He was paid $35 for each hour worked during this week. An image of the accompanying wage statement Daniel Mirea received is included:



45. For example, for the pay period beginning on March 21, 2022, and ending on March 27, 2022, Daniel Mirea worked approximately fifty-six hours. He was paid $40 for each hour worked during this week. An image of the accompanying wage statement Daniel Mirea received is included:

### FIRST CLAIM
### (FLSA – Unpaid Overtime)

46. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

47. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages at the rate of one and one-half their regular hourly wage rates per hour worked in excess of forty per workweek.

9

48. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

49. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

50. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

51. Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (NYLL – Unpaid Overtime)

52. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

53. Pursuant to the NYLL and supporting New York State Department of Labor ("NYDOL") Regulations, Defendants were required to pay Plaintiffs one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

54. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting NYDOL Regulations, and employed Plaintiffs.

55. Defendants failed to pay Plaintiffs overtime wages equal to one and one-half (1½) times their regular hourly rates of pay per hour worked in excess of forty per workweek.

56. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

10

57. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### THIRD CLAIM
### (NYLL – Failure to Provide Wage Notices)

58. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

59. The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

60. Defendants failed to furnish to Plaintiffs at the time of hiring, and whenever there was a change to Plaintiffs' rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

61. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### FOURTH CLAIM
### (NYLL – Failure to Provide Accurate Wage Statements)

62. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

11

63. Defendants failed to furnish Plaintiffs, with each wage payment, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

64. Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs are entitled to recover from the Defendants liquidated damages of $250 per workday, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. declare that Defendants violated the overtime wage provisions of the FLSA and the NYLL;

b. declare that Defendants violated the notice and record-keeping provisions of the NYLL and WTPA;

c. declare that Defendants' violations of the FLSA and NYLL were willful;

d. award Plaintiffs unpaid overtime wages;

e. award Plaintiffs statutory damages as a result of Defendants' failure to furnish them with a notice at the time of hiring or whenever there was a change in their rates of pay, in violation of the NYLL and WTPA;

f. award Plaintiffs statutory damages as a result of Defendants' failure to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

  g.  award Plaintiffs liquidated damages pursuant to the FLSA and the NYLL;

  h.  award Plaintiffs pre- and post-judgment interest under the NYLL;

  i.  award Plaintiffs reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

  j.  award such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
   January 30, 2023

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman
Christian Mercado
Pechman Law Group PLLC
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
mercado@pechmanlaw.com

*Attorneys for Plaintiffs*